956 So.2d 483 (2007)
CITIZENS PROPERTY INSURANCE CORPORATION, Appellant/Cross-Appellee,
v.
Thomas UEBERSCHAER, Appellee/Cross-Appellant.
No. 1D06-0291.
District Court of Appeal of Florida, First District.
March 28, 2007.
Order Granting Certification May 25, 2007.
Rehearing Denied May 25, 2007.
G. Alan Howard and Robert M. Dees of Milam, Howard, Nicandri, Dees & Gillam, P.A., Jacksonville, for Appellant.
Eric P. Sventek of Thomas J. Ueberschaer, P.A., Pensacola; Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, for Appellee.
*484 LEWIS, J.
Appellant/Cross-Appellee, Citizens Property Insurance Corporation ("Citizens") seeks review of a final judgment in favor of Appellee/Cross-Appellant, Thomas Ueberschaer ("Ueberschaer"), which concluded, in pertinent part, pursuant to the 2004 version of Florida's Valued Policy Law ("VPL"), as interpreted by Mierzwa v. Florida Windstorm Underwriting Ass'n, 877 So.2d 774 (Fla. 4th DCA 2004), that: Ueberschaer's dwelling was insured for a covered peril; it was a constructive or actual total loss; and awarded policy limits for Ueberschaer's dwelling, other structures coverage, and ordinance and law coverage. For the reasons expressed herein, we reverse the trial court's final judgment to the extent it awards Ueberschaer policy limits for other structures coverage and ordinance or law coverage, and remand for further proceedings consistent with this opinion. We otherwise affirm the final judgment. We find no error with respect to the remaining issues on appeal and the cross-appeal and, thus, decline to address those issues further.

I. Background
Citizens is a statutorily created insurer of last resort authorized to write insurance in Florida in accordance with section 627.351(6), Florida Statutes (2004), which limits Citizens' mission to providing wind-only coverage. Ueberschaer owned a two-story dwelling and detached pool house in Santa Rosa County. Citizens issued a homeowners' policy to Ueberschaer, which covered his dwelling and pool house for loss or damage caused by windstorm and other named perils with the following limits of liability: Coverage A  Dwelling ($456,300); Coverage B  Other Structures ($45,630); Coverage C  Personal Property ($228,150); and Coverage D  Loss of Use ($45,630). As pertinent to this case, damage caused by flood is specifically excluded from coverage.
On September 16, 2004, Ueberschaer's property sustained extensive damage from both windstorm and storm surge caused by Hurricane Ivan. As a result, the Santa Rosa County Building Inspection Department issued a notice of determination of "substantial damage" to Ueberschaer which included the following directive:
As a result of a substantial damage determination, the County has determined that your structure received damages exceeding 50% of the pre-damage structure value as the result of the flooding related to Hurricane Ivan, on September 16, 2004.
Under the [National Flood Insurance Program ("NFIP")] requirements (44 Code of Federal Regulations 59.1), structures located within the 100-year floodplain that receive damage of any origin, whereby the cost of restoring the structure would equal or exceed 50% of the structure value, must be brought into compliance with the NFIP requirements. For residential structures with more than 50% damage, the structures must be either removed from the floodplain or have the lowest floor (including basement) elevated to or above the 100-year flood elevation. Failure to comply with this requirement will result in fines and/or legal action by the County against the owner of the structure.
Although Citizens acknowledged the county's substantial damage determination, it informed Ueberschaer that it would pay only the damage actually caused by windstorm because the covered peril of windstorm did not cause one hundred percent of the damage.
Thereafter, on December 22, 2004, Ueberschaer filed suit against Citizens, claiming the policy limits for his dwelling, pool house, personal property, and additional *485 living expenses (loss of use). He alleged, among other things, that the substantial damage determination issued by Santa Rosa County rendered the insured property a total loss, which entitled him to policy limits from Citizens under the VPL, section 627.702(1), Florida Statutes (2004). He further alleged that Citizens had breached the insurance contract because he made a demand for the full amount of coverage, but Citizens failed to make such payment.
On May 19, 2005, Ueberschaer filed a Motion for Summary Judgment, arguing there was no genuine issue of material fact and that he was entitled to judgment as a matter of law pursuant to Mierzwa. Ueberschaer alleged the flood elevation certificate issued to him revealed that the top of the bottom floor of the house in question fell below the applicable base flood elevation and that, as a result, the only way for him to conform to current construction requirements was to demolish the house and rebuild at or above the appropriate base flood elevation. According to Ueberschaer, this represented a constructive or actual total loss of the residence, and Citizens had acknowledged that the residence had been determined to be a total loss.
In its answers to Ueberschaer's first request for admissions, which were also filed in support of the Motion for Summary Judgment, Citizens admitted that Ueberschaer's residence had sustained some wind damage. In its answers to Ueberschaer's second request for admissions, Citizens admitted: the Santa Rosa County Building Inspection Department had issued a Notice of Determination of substantial damage regarding the property in question; some of the damage was caused by a covered peril; and it sent Ueberschaer a letter dated January 21, 2005, stating in part that his residence had been determined to be a total loss.
Citizens subsequently filed a memorandum of law opposing Ueberschaer's Motion for Summary Judgment, in which it argued, among other things, that its enabling legislation precluded liability for flood damage, that Mierzwa was not controlling and conflicted with established principles of Florida law, and that the 2005 amendment to the VPL made clear that Mierzwa contradicts the legislative intent behind the VPL. Following the hearing on Ueberschaer's Motion for Summary Judgment, the trial court issued an Order Granting Plaintiff's Motion for Summary Judgment, in which it found that there was no material dispute as to the facts that the house at issue was insured as to a covered peril and that it was a constructive or actual total loss. Accordingly, it granted summary judgment pursuant to Mierzwa.
On August 30, 2005, the trial court entered a Final Judgment, awarding Ueberschaer $421,906.76 for Coverage A  Dwelling, $41,734.81 for Coverage B  Other Structures, $42,370 for Coverage D  Loss of Use, policy limits for Code Compliance Endorsement, also referred to as ordinance or law coverage, which amounted to twenty-five percent of Coverage A or $114,075, and prejudgment interest of $33,564.18. The amounts awarded for Coverages A, B, and D are equal to the policy limits for each type of coverage less payments Citizens had already made to Ueberschaer.
During a September 7, 2005, hearing on Citizens' Motion for Rehearing on Plaintiff's Motion for Entry of Final Judgment, Citizens asserted the Final Judgment included damages not previously addressed. Citizens argued that the VPL did not apply to the ordinance or law coverage because the amount of coverage was not directly stated in the policy but, rather, was a percentage of another type of coverage provided by the policy. Thus, Citizens *486 argued Ueberschaer should only be entitled to costs actually incurred to comply with laws or ordinances and because no such evidence was presented, the record did not support any award for ordinance or law coverage. Citizens further argued an award for other structures coverage was unwarranted because there was no evidence regarding damages done to structures other than the house. Citizens also contended that the VPL was inapplicable to loss of use coverage and that an award for loss of use was also unwarranted because it was not supported by any evidence. Ueberschaer argued the VPL applied to all types of coverage at issue and, thus, Citizens was liable for policy limits as to each type.
Following that hearing, the trial court vacated the Final Judgment and entered an Amended Final Judgment, in which it awarded Ueberschaer the same amounts for Coverage A  Dwelling and Coverage B  Other Structures, denied further recovery for Coverage D  Loss of Use and ordinance or law coverage, and reserved jurisdiction to hear evidence and argument on Ueberschaer's entitlement to additional amounts for the latter two types of coverage. The trial court also found that Ueberschaer was not entitled to prejudgment interest.
Following a hearing on the issues of loss of use and ordinance or law coverage, and on Ueberschaer's Motion for Rehearing regarding his entitlement to prejudgment interest, the trial court issued a second Final Judgment awarding the previously stated amounts for Coverages A and B, $42,370 for Coverage D  Loss of Use, and $114,075 for ordinance or law coverage (Code Compliance Endorsement). As it had done in its previously entered Amended Final Judgment, the trial court denied Ueberschaer's claim for prejudgment interest. This appeal and cross-appeal followed.

II. Standard of Review
As both parties acknowledge, the standard of review of the granting of final summary judgment in the case before us is de novo. See Fayad v. Clarendon Nat'l Ins. Co., 899 So.2d 1082, 1085 (Fla.2005); Davis v. Bruhaspati, Inc., 917 So.2d 350, 351 (Fla. 1st DCA 2005).

III. Analysis
A. Flood Exclusion and Anti-Concurrent Cause Clause Provision
Turning now to the merits, Citizens argues the VPL does not override Citizens' flood exclusion nor its anti-concurrent cause clause ("ACCC"). We disagree. This argument is based on Citizens' disagreement with the holding in Mierzwa that the VPL, prior to the 2005 amendments,[1] requires payment of policy limits when a total loss is caused by a combination of wind and flood even when the policy contains a clause specifically excluding flood damage. See id. at 777-79. The 2004 version of the VPL, which is applicable to this case, provides in pertinent part:
In the event of the total loss of any building . . . located in this state and insured by any insurer as to a covered peril . . . the insurer's liability, if any, under the policy for such total loss shall be in the amount of money for which such property was so insured as specified in the policy and for which a premium has been charged and paid.
§ 627.702(1).
In Mierzwa the insured had a windstorm insurance policy with Florida Windstorm *487 Underwriting Association ("FWUA"), which had a face value of $281,000, contained an ACCC similar to Citizens' ACCC that excluded coverage for any damage other than that caused by wind, and expressly excluded flood damage. 877 So.2d at 775-76. The insured also had separate flood insurance coverage from another insurer. Id. at 776. The insured's home was badly damaged by a hurricane, and the insured filed claims under both policies. Id. FWUA took the position that it was liable for $73,177 as a result of the wind damage, while the flood insurer determined that the cost to repair the flood damage was $54,485. Id. Thus, the combined cost of repairs for both wind and flood damage was $127,662, and wind damage represented fifty-seven percent of that total. Id. The local building official determined that the total cost of repairs to the insured building would exceed half its value, which meant that pursuant to a local ordinance, the building had to be made to conform to building code rules applicable at the time the repairs were made. Id. at 776-77. FWUA argued the ACCC excluded its liability for the total amount of the policy under the VPL because the total loss was caused partially by flood, a specifically excluded peril. Id. at 777. Thus, FWUA argued, the text of the VPL had to give way to the ACCC, which made it liable for only fifty-seven percent of the damage. Id. The trial court agreed and entered judgment in favor of FWUA, but the Fourth District reversed, holding the VPL was applicable and required FWUA to pay policy limits. Id. at 777-78.
The Mierzwa court held that where a covered peril caused part of the damage to a structure that has been determined to be a total loss, the VPL requires the insurance carrier to pay policy limits. Id. at 777. In so holding, the Mierzwa court applied the plain meaning of the statute to reject FWUA's argument that its liability was limited to the pro rata share of the loss caused by wind:
The meaning of the VPL is simple and straightforward. There are two essentials in the statute. The first is that the building be "insured by [an] insurer as to a [e.s.] covered peril." § 627.702(1). The second is that the building be a total loss. If these two facts are true, the VPL mandates that the carrier is liable to the owner for the face amount of the policy, no matter what other facts are involved as to the cost of repairs or replacement. That is to say, if the insurance carrier has any liability at all to the owner for a building damaged by a covered peril and deemed a total loss, that liability is for the face amount of the policy.
The VPL statutory text does not require that a covered peril be the covered peril causing the entire loss; it need merely be a covered peril. Plainly when these requisites exist, pro rata liability under the VPL would be in conflict with its terms, because the VPL provides that any liability of a casualty insurer where a covered peril is involved in a total loss must be for the face amount rather than pro rata with other coverages.
Id. at 775-76 (alterations in original) (citations omitted). Further, the Mierzwa court found the ACCC did not relieve the insurer's liability under the VPL because the statute and the clause conflicted, which created an ambiguity in the policy. Id. at 777. Following the rule that ambiguities in insurance contracts are to be resolved in favor of the insured, the Mierzwa court applied the VPL as written. Id. at 777-78. Applying the Mierzwa court's straightforward analysis to this case, because a covered peril (windstorm) contributed to the damage of a structure determined to be a *488 total loss, Citizens is liable under the VPL for the face amount of its policy.
Recently, after the trial court entered its final judgment in the present case, this Court cited Mierzwa's above-quoted interpretation of the VPL with approval and held the plain language of the 2004 version of the VPL makes the insurer liable, if at all, then in the full amount for which the property was insured, even where multiple perils contribute to the total loss of the property. Fla. Farm Bureau Cas. Ins. Co. v. Cox, 943 So.2d 823, 827-28 (Fla. 1st DCA 2006), jurisdiction accepted, 948 So.2d 758 (Fla.2007). In doing so, this Court found that the 2005 amendment to the VPL cannot be read as a clarification of the legislative intent behind its predecessor because the amendment unambiguously states that it is not to be applied retroactively to claims filed before it was enacted and, thus, it was intended only to effect a prospective change in the law. Id. at 829. In regard to the 2004 version of the VPL, which is applicable here, we pointed out in Cox that "[b]ecause the VPL has been amended since, moreover, there is no danger that people will rush out to cancel their flood insurance, counting on windstorm insurers to cover any total loss." Id. at 835. This Court also made clear that the VPL controls when it conflicts with provisions of the insurance policy at issue. Id. at 832-33. As such, Citizens' arguments that the VPL does not override the ACCC and flood exclusion in its policy and that Mierzwa misinterpreted the VPL in concluding that insurers are liable for policy limits when wind and flood combine to cause a total loss are without merit. Since Ueberschaer's dwelling sustained a total loss, the VPL foreclosed Citizens' challenge to Ueberschaer's measure of damages for his dwelling.
Citizens also argues that, even if the VPL could be construed as it was in Mierzwa, the fact that Citizens is statutorily authorized to provide only windstorm coverage and is prohibited from providing flood coverage would prevent application of the VPL to sustain Ueberschaer's position. We reject Citizens' argument that imposing liability against the insurer under the VPL for a total loss caused by a combination of wind and flood conflicts with its enabling legislation, which limits Citizens' mission to providing wind-only coverage. See § 627.351(6)(q). We find no conflict between the relevant provisions of Citizens' enabling legislation, section 627.351(6)(q), and the VPL, section 627.702(1), as they address different situations. See generally Farris v. Fla. Dep't of Children & Families, 941 So.2d 512, 513 (Fla. 1st DCA 2006) (finding no conflict between two provisions because the statutes referred to two different types of income/situations).
Citizens' enabling statute provides in pertinent part: "the risk will not be covered for flood damage" and "policyholder . . . making a claim for water damage against the corporation shall have the burden of proving the damage was not caused by flooding." § 627.351(q), Fla. Stat. (2004). Here, Ueberschaer is not making a claim for flood or water damage, as the statute addresses. Instead, Ueberschaer is making a claim for windstorm damages and corresponding total loss costs by requesting a fixation of the measure of damages equal to the predetermined amount in the policy. Citizens' enabling statute and the VPL address different situations, and the pertinent situation here, that of fixing the measure of damages where there is a total loss, is addressed by the VPL. See § 627.702(1). The insurance carrier is, therefore, responsible for the amount predetermined as policy limits. Citizens is not required to provide flood coverage, as prohibited by its enabling statute. Instead, Citizens is required only to pay *489 policy limits when windstorm contributes to a total loss, regardless of other contributors.
If the insurance carrier
aspire[d] to apportion total loss damages under the VPL when differing causes combine to create a total loss, they should begin that effort with express text . . . When carriers do include appropriate text, a court can assess whether such a provision has the desired effect. Here we have no occasion to make that judgment because we face no such text.
Mierzwa, 877 So.2d at 779. Express text also could have been included in Citizens' enabling statute, but instead, it is silent as to a total loss situation and subsequent apportionment of damages, and thus "we have no occasion to make that judgment." See id.
Further, neither Mierzwa nor Cox requires Citizens to provide flood coverage, but only to pay policy limits for windstorm coverage when flooding contributes to a total loss partially caused by windstorm. Nothing in the enabling legislation prevents this Court from imposing liability against Citizens under the VPL when flood contributes to a total loss partially caused by wind. As Citizens' enabling legislation does not exempt it from complying with the VPL or provide it preferential treatment over private insurance carriers, Citizens' argument is without merit. See § 627.351(6).
Our holding is further buttressed by this Court's analysis of the purpose of the VPL in Cox. "The purpose of a valued policy law is to fix the measure of damages when there is a total loss. . . . `[A]n important object of the statute is also to simplify and facilitate prompt settlement of insurance claims when a total loss occurs.'" Cox, 943 So.2d at 831 (quoting Springfield Fire & Marine Ins. Co. v. Boswell, 167 So.2d 780, 784 (Fla. 1st DCA 1964)). Another purpose is to reduce administrative costs:
Insurance companies need not incur expenses for experts to pick through rubble to ascertain, for example, whether hurricane damage was done by wind-driven surface water spray, on one hand, or rainfall in a windstorm, on the other; nor, when experts disagree on such questions, does the VPL require the parties to bear the additional expense of litigation.
Cox, 943 So.2d at 832. Here, the focus of Ueberschaer's claim is to fix his damages where a covered peril caused part of the total loss, which will spare additional costs consistent with the language and purpose of the VPL. Since Ueberschaer's dwelling sustained a total loss, the VPL foreclosed Citizens' challenge to Ueberschaer's measure of damages for his dwelling. Accordingly, we affirm the trial court's determination that, under the circumstances of this case, Ueberschaer sustained a total loss to his dwelling, which entitled him to the policy limits for his dwelling under the 2004 VPL.
B. Application of the VPL to Other Structures and Law or Ordinance Coverages
Citizens argues the trial court erred in awarding policy limits for ordinance or law coverage and other structures coverage because the VPL does not apply to those types of coverages. We agree. Recently, in Vanguard Fire & Casualty Co. v. Golmon, 955 So.2d 591, 594 (Fla. 1st DCA 2006), this Court cited Citizens Property Insurance Corp. v. Ceballo, 934 So.2d 536 (Fla. 3d DCA 2006), for the proposition that other structures coverage, ordinance or law coverage, personal property coverage, and loss of use coverage are not governed by the VPL or Mierzwa. Thus, this court found that even if the *490 insurer's admission of limited liability under the VPL meant that it was liable for the full policy limits as to the dwelling itself, the extent of loss or damage under the remaining provisions of the policy remained unsettled. Golmon, at *3, 955 So.2d at 594-95. Accordingly, the final judgment is reversed to the extent that it awards Ueberschaer policy limits for other structures coverage and ordinance or law coverage in the absence of any evidence as to the amount of damage sustained by structures on the premises other than Ueberschaer's dwelling or any evidence as to the amount of increased costs Ueberschaer incurred due to the enforcement of an ordinance or law.

IV. Conclusion
For the foregoing reasons, we reverse the trial court's final judgment to the extent it awards Ueberschaer policy limits for other structures coverage and ordinance or law coverage, and remand for further proceedings. In all other respects, the final judgment is affirmed.
AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
PADOVANO, J., Concurs;
THOMAS, J., Concurs in Part and Dissents in Part with Written Opinion.
THOMAS, J., Concurring in Part and Dissenting in Part.
I concur with the majority's holding that the trial court erred in awarding the policy limits for ordinance or law coverage and other structure coverage, because the Valued Policy Law does not apply to those coverages.
I respectfully dissent from the majority's holding that the Valued Policy Law requires Citizens to provide flood loss coverage. Flood loss coverage is expressly prohibited by the enabling legislation which authorizes Citizens as a quasi-governmental entity. § 627.351(6), Fla. Stat. (2004). The Legislature has the constitutional authority to create a limited insurance corporation which provides only limited coverage in order to minimize public costs. This is precisely what the Legislature did in creating Citizens. Under article II, section 3, of the Florida Constitution, we are not empowered to change this legislative act. This is especially true where the statutory language at issue is clear, is more specific than the contradictory statute, and is enacted after the conflicting provision. I respectfully submit that the majority errs in relying on a general law that does not and cannot control the more specific enabling legislation.
Two rules of statutory construction are applicable here, both of which the supreme court relied on in McKendry v. State, 641 So.2d 45 (Fla.1994). "First, a specific statute covering a particular subject area always controls over a statute covering the same and other subjects in more general terms." Id. at 46. Here, Citizens' enabling statute, which specifically prohibits Citizens from providing flood coverage, is more specific than the Valued Policy Law, which otherwise requires such coverage where a dwelling is a total loss. "Further, when two statutes are in conflict, the later promulgated statute should prevail as the last expression of legislative intent." Id. Here, the enabling statute is the later promulgated statute when compared to the Valued Policy Law.[2] I would hold that the *491 enabling legislation applies, not the Valued Policy Law. This enabling legislation, by its plain language, prohibits Citizens from providing flood loss coverage.
As Citizens notes, section 627.351(6)(q), Florida Statutes (2004), expressly limits Citizens' authority to provide insurance coverage only for wind damage. Subsection (q) prohibits Citizens from requiring the insured to obtain flood coverage "if the insured or applicant executes a form . . . affirming that flood insurance is not provided by the corporation and that if flood insurance is not secured by the applicant or insured in addition to coverage by the corporation, the risk will not be covered for flood damage." Id. (emphasis added). In addition, this subsection requires that in an insured's claim for water damage, the insured "shall have the burden of proving the damage was not caused by flooding." Id. (emphasis added). In fact, Citizens' policies incorporate this legislative directive and exclude coverage for water and flood damage. I do not believe the Legislature could more clearly state its intent that Citizens shall not provide flood insurance, and that an applicant or insured cannot depend on Citizens for such coverage.
The Legislature acted to ensure that Citizens would not function as simply another private insurer. The enabling statute accomplishes this by: (1) creating Citizens as a not-for-profit political subdivision of the state; (2) granting immunity to Citizens' agents, employers, and board of governors for certain actions in the performance of their duties; (3) subjecting Citizens to open meeting laws; and (4) exempting Citizens from corporate taxation and, upon dissolution, declaring its assets as state property. § 627.351(6), Fla. Stat. (2004). This legislative protocol establishes that Citizens is a political subdivision of the state. See, e.g., Bankers Ins. Co. v. Fla. Residential Prop. & Cas. Joint Underwriting Ass'n, 137 F.3d 1293, 1297 (11th Cir.1998) (Citizens' predecessor association qualified as political subdivision of state for purposes of exemption from antitrust liability, where the association acts according to clearly articulated state policy).
In my view, all of this compels one conclusion: the Valued Policy Law is not applicable to Citizens. Thus, the majority incorrectly holds that our decision today is controlled by our prior decision in Florida Farm Bureau. Although I recognize that other provisions of section 627.351(6), Florida Statutes (2004), refer to legislative directives to provide value and service to Citizens' policyholders, that general language cannot control the more specific directives described above. I therefore respectfully dissent from the majority's holding that windstorm insurance policies issued by this legislatively-created corporation must provide coverage for the excluded peril of flood damage under the Valued Policy Law.

ON APPELLANT'S MOTION FOR CERTIFICATION TO THE FLORIDA SUPREME COURT
PER CURIAM.
Appellant/Cross-Appellee's motion is granted to the extent that we certify the following question to the Florida Supreme Court as a question of great public importance:
DOES THE ENABLING STATUTE FOR CITIZENS PROPERTY INSURANCE CORPORATION, § 627.351(6), FLA. STAT. (2004), PRECLUDE AN *492 AWARD OF POLICY LIMITS UNDER THE VALUED POLICY LAW, § 627.702(1), FLA. STAT. (2004), WHEN THE COVERED PERIL OF WINDSTORM AND THE EXCLUDED PERIL OF FLOOD COMBINE TO PRODUCE A TOTAL LOSS TO THE INSURED PROPERTY?
PADOVANO, LEWIS, and THOMAS, JJ., concur.
NOTES
[1] In 2005, the Legislature substantially revised the VPL statute and explicitly provided that the amended law would not apply retroactively. Unlike the 2004 version of the VPL, the 2005 amendment to the VPL statute permits the insurer to apportion the benefits payable for a total loss between covered and excluded perils.
[2] The Valued Policy Law was amended in 1983 to require coverage for total losses caused by multiple perils where an insurance policy provided coverage for one of those perils. See Ch. 82-243, § 539, at 1551, Laws of Fla. (amending statute so that it applies to losses attributable to any covered peril instead of only "fire or lightning"). Citizens' enabling statute was enacted in 2002. See Ch. 02-240, § 2, at 2, Laws of Fla.