EMAS, J.
Erika Reyan was charged by Information with a single count of racketeering in violation of section 895.03(3), Florida Statutes (2003). Reyan filed a motion to dismiss, contending the RICO prosecution was barred by the five-year statute of limitations. The trial court granted the motion and dismissed the Information against Reyan, from which the State appeals. For the reasons that follow, we affirm.

FACTS AND BACKGROUND

The relevant facts are as follows:
On September 24, 2010, Reyan (together with five co-defendants) was charged in count One of a two-count Information with violation of the Racketeer-Influenced and Corrupt Organization Act (“RICO” or “racketeering”).[1] Count One set forth the allegations of the substantive RICO Count in three segments.
• General Allegations
The general allegations of Count One of the Information charged that the defendants:
[O]n or between October 1, 2002 through September 30, 2005 ... employed by or being associated with an enterprise, to wit: The Wackenhut Corporation, a legal entity, did unlawfully, knowingly and feloniously conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity, in violation of s. 895.03 and 777.011 Florida Statutes ....
• The Enterprise
In further support of Count One, the State described the “enterprise” as:
The Wackenhut Corporation, that is a corporation and/or a legal entity comprised of the above named Defendants and other individuals both known and unknown to the State Attorney, who played different roles in the Enterprise. These Enterprise members associated together for the purpose of falsifying payroll documentation in order to continue to provide security officer services to Miami-Dade Transit (MDT) with respect to the Security Officer Services Contract (Contract).
• The Pattern of Racketeering Activity (Predicate Acts)
By way of setting forth the “pattern of racketeering activity,” the Information contained 840 individual predicate acts comprised of: an organized scheme to de *135 fraud (in violation of section 817.034, Florida Statutes (2003)) and grand theft (in violation of section 812.014, Florida Statutes (2003)).
Each of the predicate acts was alleged to have occurred on a specific date falling within the October 1, 2002-September 30, 2005 timeframe, and the State alleged that each charged defendant participated in at least two incidents of racketeering activity. None of the 840 predicate acts named the individual defendants who participated in that particular predicate act and instead named the Enterprise (Waekenhut) generally.
Significantly, nowhere in Count One’s general allegations, description of the Enterprise, or any of the 840 predicate acts, did the State allege that Reyan or her co-defendants engaged in a conspiracy to commit RICO. Nor does Count One allege that the defendants conspired to commit any of the predicate acts that comprise the pattern of racketeering activity.
By contrast, Count Two of the Information alleged that one of the co-defendants engaged in a conspiracy (together with uncharged co-conspirators) to commit RICO in violation of section 895.03(4), Florida Statutes (2003). Reyan, however, was not charged in Count Two.
Detective David Colon’s affidavit (“the Affidavit”) in support of the arrest warrant for Reyan was attached to the information. The Affidavit described a scheme that arose out of a Security Officer Services Contract (the “Contract”) between Waek-enhut and Miami-Dade Transit (“MDT”). The Contract required Waekenhut to provide security services and personnel to man specific locations within MDT, and Wackenhut’s procedures required security personnel to log their hours worked in a sign-in register. Waekenhut utilized the sign-in registers to submit its hours and corresponding invoices to Miami-Dade County (“the County”).
As described in the Affidavit, the County conducted an audit of the Contract and the work performed, covering a three-year period from October 2, 2002 through September 30, 2005. The audit revealed that Waekenhut overbilled the County a minimum of $76,657.07 during this period and submitted at least 3,517.51 hours for security services never performed. The audit and resulting investigation formed the basis for the State’s allegations that Wacken-hut and its employees engaged in a pattern of racketeering activity to perpetrate a scheme to defraud the County by falsifying sign-in registers, generating false payroll and monthly invoices, and receiving monies for services not performed.
The Affidavit indicated that Reyan began working for Waekenhut in 1998 as secretary and assistant to the project manager.[2] Reyan was primarily responsible for preparing payroll, which included generating the invoices that would be submitted to the County for payment. Sign-in registers were submitted from the various posts to Reyan, who would then input the information in Wackenhut’s payroll and invoice computer program.
Pursuant to the Affidavit, the investigation also revealed that:
• Reyan was present during conversations in which it was discussed that security personnel were leaving their posts early but were submitting paperwork (and receiving payments) for entire shifts.
*136 • Reyan knew how many hours needed to be billed for each post; when registers were incomplete or contained discrepancies, she inquired and ultimately received names in order to complete the registers and bill the County.
• From October 1, 2002 through December 31, 2003, Reyan prepared invoices to be submitted to the County. These invoices contained 309 fraudulent entries, resulting in a minimum of 1,968 hours for security services never performed and a minimum overbilling of $39,665.74.
• Reyan took a leave of absence from Wackenhut in February 2004. She resigned from her position in the Miami office on May 21, 2004 and thereafter accepted a position with Wackenhut in Atlanta. Reyan trained her replacement in one day; however, after Reyan left the Miami office, her replacement would sometimes contact Reyan by telephone.
Reyan contended that the substantive RICO prosecution was barred by the five-year statute of limitations.[3] Reyan pointed out that the last predicate act attributable to her in the charging document occurred on December 28, 2003, which was the date of the last billing invoice transaction for which she was accused of being an individual participant. This act occurred almost seven years before the filing of the Information on September 24, 2010. Rey-an argued that the State could not rely on the acts of the other co-defendants in the enterprise to satisfy the limitations period since the State did not charge Reyan with a RICO conspiracy.
The State argued in response that the statute of limitations did not commence from the date of the last act personally performed by the defendant, but from the date of the last act performed by the enterprise, so long as the defendant remained associated with the enterprise at that time.
The trial court held a hearing on the motion to dismiss, and at that hearing the parties stipulated that Reyan stopped advising her replacement as of June 2004 and that Reyan had no contact with the Miami office after that date. The State argued nevertheless that Reyan remained a part of the enterprise, that the enterprise engaged in acts which constituted an ongoing scheme to defraud, and that this scheme continued through September 30, 2005. Reyan argued that the ongoing scheme to defraud was wholly dependent on the grand theft charges, which were not continuing offenses, and therefore the statute of limitations should be measured from December 28, 2003, the date when Reyan engaged in the last act alleged against her.
In granting the motion to dismiss, the trial court found that the State had to commence the prosecution against Reyan within five years of her last personal commission of a predicate act. It was undisputed that the last billing invoice transaction completed by Reyan occurred on December 28, 2003. The court found that the five-year limitations period as to the substantive RICO offense against Reyan expired on December 28, 2008. Because the State did not file the substantive RICO against Reyan until September 24, 2010, the trial court dismissed the charge against Reyan.

THE RELEVANT STATUTORY PROVISIONS

Sections 895.03(3) and (4), Florida Stat *137 utes (2003),[4] referred to as substantive RICO and RICO conspiracy, respectively, provide:
(3) It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.
(4) It is unlawful for any person to conspire or endeavor to violate any of the provisions of subsection (1), subsection (2) or subsection (3).
The term “racketeering activity” as defined in section 895.02(1), Florida Statutes (2003) “means to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit” any crime chargeable by indictment or information under specifically enumerated criminal statutes, including those encompassed under the subject Information (grand theft and organized scheme to defraud).
Other relevant statutory definitions include:
• An “enterprise,” which is defined as “any ... group of individuals associated in fact although not a legal entity[.]” § 895.02(3), Fla. Stat. (2003); and
• A “pattern of racketeering activity,” which is defined as
engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering conduct.
§ 895.02(4), Fla. Stat. (2003).
A violation of the RICO provisions is governed by a five-year statute of limitations. § 895.05(10), Fla. Stat. (2003).

ANALYSIS

The question before this Court is whether, in a substantive Florida RICO prosecution, the statute of limitations begins to run from the date of the last predicate act in which the defendant personally participated or the date of the last predicate act committed by the enterprise as a whole. The parties agree that if it is the former, the prosecution in this case is barred by the five-year statute of limitations. We review this question of law de novo. State v. Pasko, 815 So.2d 680 (Fla. 2d DCA 2002).
The trial court based its determination in part on O’Malley v. Mounts, 590 So.2d 437 (Fla. 4th DCA 1991). In O’Malley, the issue was whether the statute of limitations barred prosecution of O’Malley, under a fifteen-count indictment of O’Malley and multiple co-defendants, charging grand theft, substantive RICO, and an organized scheme to defraud, arising out of the theft of corporate bonds.
The State commenced the O’Malley prosecution on July 12, 1989. The defendant moved to dismiss based upon statute of limitations. O’Malley contended the thefts were alleged to have occurred on October 13, 1983 and May 4, 1984, the dates on which he received personal loans *138 secured by bonds he wrote for an insurance company. The State argued that the offenses charged were “continuing offenses,” that O’Malley’s crimes continued until July 18, 1984 (the date on which O’Malley defaulted on the loans), and that the prosecution was therefore commenced within the five-year limitations period. The trial court denied the motion to dismiss, and on a petition for writ of prohibition, the Fourth District Court of Appeal determined the prosecution was barred by the statute of limitations. Our sister court first determined that grand theft is not a “continuing offense” and that the date of the individual criminal acts of grand theft would determine when the limitations period commenced.
Additionally, the Fourth District analyzed the substantive RICO and scheme to defraud in the same manner, focusing not on the dates of the acts of the enterprise (which the State argued continued through July 18,1984) or the dates of the acts of its other members, but on the date of the criminal acts O’Malley personally committed:
In Count 1 of the indictment, petitioner was charged with racketeering, and in Count 15, he was charged with committing an organized scheme to defraud. The statute of limitations for the offenses is five years from the date of commission of the crime as to the racketeering charge, section 895.05(10), Florida Statutes (1987), and four years as to the offense of committing an organized scheme to defraud, section 775.15(2)(a), Florida Statutes (1987). While the state stipulated that petitioner committed no criminal acts subsequent to July 18, 1984, petitioner maintained that the alleged criminal acts occurred on October 13,1983 and May 4,1984, barring prosecution on those counts after October 13, 1988, for Count 15, and May 4, 1989 for Count 1. The state did not bring the indictment until July 12, 1989. We agree with the petitioner and grant the petition as to Counts 1 and 15.
Id. at 438.
In the instant case, the State attempts to distinguish O’Malley by arguing that O’Malley does not address RICO conspiracy but rather is limited to the charge of substantive RICO. However, in both O’Malley and in our case, the defendant was charged with a substantive RICO, not a RICO conspiracy. Additionally, none of the predicate acts set forth in the instant Information contain an allegation of conspiracy. Instead, the 840 predicate acts are based on discrete incidents occurring on specific dates. Each predicate act alleged that Wackenhut, on a date certain, falsely billed specific hours for work not performed, thereby giving rise to the grand theft and organized scheme to defraud charges.[5]
The State also contends that, because Florida’s statutory definition of “racketeering activity” includes the language “to conspire to commit,” a substantive RICO charge can be established by proof of one or more conspiracies to commit the predicate acts, and that the Information need not actually allege a conspiracy to commit the predicate acts of racketeering. Thus, the State contends, Reyan’s involvement in conspiring to *139 commit the predicate acts did not end until the scheme was complete on September 80, 2005. While the State can indeed establish a substantive RICO charge by proving that defendants conspired to commit predicate acts of racketeering activity,[6] this does not dispense with the altogether different requirement that the State plead a RICO conspiracy if it intends to charge a defendant with a RICO conspiracy.
More to the point, the State’s argument appears to conflate the very different concepts of a RICO conspiracy charge and a substantive RICO charge that alleges one or more conspiracies to commit predicate acts of racketeering. To better understand the distinction between these concepts, we look for guidance to federal courts which have construed the federal RICO statutes upon which Florida’s RICO scheme was largely modeled. See Gross v. State, 765 So.2d 39 (Fla.2000); Mese v. State, 824 So.2d 908 (Fla. 3d DCA 2002).
In a substantive RICO prosecution, the gravamen of the “crime” is the pattern of racketeering activity; that is, the individual predicate acts alleged to have been committed by the defendant. The limitations period commences upon the date the “crime” is completed which, for substantive RICO purposes, is the date of the last charged predicate act committed by the individual defendant. United States v. Yannotti, 541 F.3d 112 (2d Cir.2008); United States v. Yashar, 166 F.3d 873 (7th Cir.1999); United States v. Starrett, 55 F.3d 1525 (11th Cir.1995); United States v. Torres Lopez, 851 F.2d 520 (1st Cir.1988); United States v. Persico, 832 F.2d 705 (2d Cir.1987).
In a RICO conspiracy, by contrast, the “crime” is premised not upon the commission of the predicate acts of racketeering, or even an agreement to commit predicate acts, but upon an agreement to participate in the affairs of the criminal enterprise through a pattern of racketeering activity.' As the Fifth Circuit held in United States v. Elliott, 571 F.2d 880, 902 (5th Cir.1978), the essence of a RICO conspiracy is an agreement “to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and not merely to commit each of the predicate crimes to demonstrate a pattern of racketeering activity.” The court in Pérsico agreed:
Although proof of a RICO conspiracy requires a demonstration that a defendant agreed to commit two or more predicate acts, rather than a simple showing that the defendant agreed to join the conspiracy, the agreement proscribed by [the federal RICO conspiracy statute] is conspiracy to participate in a charged enterprise’s affairs, not conspiracy to commit predicate acts.
Pérsico, 832 F.2d at 713.
In a RICO conspiracy, therefore, the limitations period does not commence *140 until the objectives of the conspiracy are accomplished or abandoned. As the Pérsi-co court further observed: “By his agreement, a RICO defendant signals his membership in a conspiracy to conduct the affairs of the charged enterprise. Thus the RICO conspiracy statute is most closely analogous to other conspiracy statutes pursuant to which overt acts in furtherance of the conspiracy need not be pleaded or proven.” Id.
In Pérsico, the Second Circuit also addressed the commencement of the limitations period for a substantive RICO. The court first looked to its prior decision in United States v. Walsh, 700 F.2d 846 (2d Cir.1983). In Walsh, the Second District held that to establish a defendant’s violation of a federal substantive RICO charge, the government had to prove that the defendant committed two or more predicate offenses, at least one of which occurred within the five-year statute of limitations. As the Pérsico court noted: “Central to our analysis [in Walsh ] was the fact that Walsh himself had participated in a timely predicate act.” Id. at 714. Emphasizing the point, the Pérsico court added: “[W]e focused [in Walsh ] solely on the defendant who raised the limitations defense and determined that he had committed one predicate act within the limitations period.” Id,. In rejecting the same argument advanced by the State here — that the limitations period for a substantive RICO should commence from the date of the last act by any person associated with the enterprise— Pérsico held:
Based on the reasoning of our prior decisions, we conclude that in order to satisfy the statute of limitations for section 1962(c) [the federal substantive RICO statute], the government must demonstrate that a defendant committed at least one predicate racketeering act within the limitations period. Such a conclusion comports with the structure of section 1962, which treats conspiracies to violate RICO and substantive RICO offenses separately. The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d) [the federal RICO conspiracy statute]. We reject the government’s attempt to analyze section 1962(c) as if it were a second RICO conspiracy statute.

Id.

Florida’s RICO provisions, like those of its federal counterpart, treat substantive RICO and RICO conspiracy separately. We agree with the reasoning of Pérsico and its progeny that the determination of the commencement of the limitations period for a substantive RICO charge must focus on the date of the individual defendant’s last predicate act rather than the date of the last predicate act of the enterprise or its other members.
The State’s argument that the limitations period for Reyan’s substantive RICO charge should commence from the date of the last act of the enterprise would blur, beyond recognition, the distinction between a substantive RICO and a RICO conspiracy. While the State may indeed plead and prove a substantive RICO by establishing a pattern of racketeering activity that includes conspiracies to commit predicate acts, this does not convert a plainly-pled substantive RICO charge into a RICO conspiracy. A conspiracy to commit predicate acts of racketeering is different in kind from a conspiracy to conduct the affairs of the enterprise through a pattern of racketeering activity.[7] The for *141 mer describes a method by which a substantive RICO can be charged and proven. The latter describes a RICO conspiracy offense. The State did not charge Reyan (as it did a co-defendant in Count Two)[8] with a conspiracy to conduct the affairs of the enterprise through a pattern of racketeering activity. Simply put, the State charged Reyan with a substantive RICO, and its effort to transform it into a conspiracy charge to avoid a limitations bar must fail.
We therefore affirm the trial court’s dismissal of the single substantive RICO count against Reyan as barred by the statute of limitations.

. The Information was later amended to include two additional co-defendants and to reformat the substantive RICO Count into the discrete sections described above.

. The project manager was the only co-defendant charged with conspiracy in Count Two of the information.

. Section 895.05(10), Florida Statutes (2003), provides in pertinent part: "Notwithstanding any other provision of law, a criminal or civil action or proceeding under this act may be commenced at any time within 5 years after the conduct in violation of a provision of this act terminates or the cause of action accrues

. Because we hold that the limitations period commenced upon the date of the last predicate act alleged to have been committed by Reyan (December 28, 2003), we apply the statutory provisions in effect at that time. Art. X, § 9, Fla. Const. (2003); Lane v. State, 337 So.2d 976 (Fla.1976). See also Perez v. State, 545 So.2d 1357 (Fla.1989); Abdullah v. State, 883 So.2d 843 (Fla. 5th DCA 2004). We note, however, that the statutory provisions at issue were not amended between 2003 and 2005.

. Each of the 840 predicate acts contained identical language except for the exact date, the amount of hours logged and billed, and the specific post location where the service was provided:
The Wackenhut Corporation billed Miami-Dade County for [] hours of security services valued at $[], allegedly performed at Post [] on [] 200[], when in truth and in fact [] hours were fraudulently billed valued at $[ ].

. Florida's RICO statute expressly includes conspiracy in its definition of racketeering activity. See § 895.02(1), Fla. Stat. Although the federal substantive RICO statute does not contain such express language, it has nevertheless been interpreted to include certain conspiracies within its definition of racketeering activity. See e.g., United States v. Weisman, 624 F.2d 1118, 1123 (2d Cir.l980)(hold-ing that that predicate acts for substantive RICO can be established by proof of conspiracy to commit offenses enumerated in 18 U.S.C. § 1961(1)(D)); United States v. Ruggiero, 726 F.2d 913 (2d Cir. 1984)(same, following Weisman). See also, United States v. Manzella, 782 F.2d 533 (5th Cir.l986)(adopt-ing reasoning of Weisman and holding that predicate acts for substantive RICO can be established by proof of conspiracy to commit offenses enumerated in 18 U.S.C. § 1961(1)(A)); U.S. v. Pungitore, 910 F.2d 1084 (3d Cir.1990) (same, following Manzel-la).

. In further distinguishing between a RICO conspiracy and a substantive RICO, the Sec *141 ond Circuit in Yannotti observed: "Indeed, to secure [the defendant’s] conviction for RICO conspiracy, the government was not required to prove the actual commission of a single predicate act by [the defendant] or any other conspirator.” 541 F.3d at 129. See also, United States v. Tello, 687 F.3d 785, 792 (7th Cir.2012) (a RICO conspiracy charge "does not require proof that the defendant committed two predicate acts of racketeering, that he agreed to commit two predicate acts, or, for that matter, that any such acts were ultimately committed by anyone”) (internal citations omitted). This underscores the fact that the RICO conspiracy statute proscribes a defendant’s agreement to participate in the conduct of the affairs of an enterprise, not a defendant’s agreement to commit predicate acts. See Starrett, 55 F.3d at 1543. Moreover, and unlike general conspiracies, a RICO conspiracy does not require proof that the defendant agreed to commit a predicate act. Id.; Salinas v. United States, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

. In stark juxtaposition with the allegations against Reyan, described supra at 2-3, Count Two alleged that a co-defendant, together with other individuals
employed by or being associated with an enterprise, to wit: The Wackenhut Corporation, a legal entity, did unlawfully and feloniously agree, conspire, combine, or confederate with each other... to violate Section 895.03, Fla. Stat., that is, to conduct or participate, directly or indirectly, in said enterprise through a pattern of racketeering activity..., said pattern of racketeering activity consisting of at least two (2) incidents of racketeering activity enumerated in Section 895.02(1) Fla. Stat., including Organized Scheme to Defraud. .. and Grand Theft....
During the course of the conspiracy, the defendants either personally engaged in at least two incidents of racketeering, or intended to otherwise participate in the affairs of the enterprise with the knowledge that other members of the conspiracy would engage in at least two incidents of racketeering....